UNITED STATES OF AMERICA
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.   CASE NOS.   8:01-CR-14-T-23MAP
8:02-CV-1847-T-23MAP

DENZIL GRANT
_____/

**REPORT AND RECOMMENDATION**

Grant is serving a sentence of 108 months after pleading guilty to three Controlled Substance Act violations. Pursuant to 28 U.S.C. § 2255, he seeks to belatedly appeal his convictions and sentences to the United States Court of Appeals for the Eleventh Circuit. In short, he claims his attorney gave him constitutionally ineffective assistance by not filing an appeal as he asked. The government, however, denies Grant wanted an appeal or that his attorney ineffectively represented him. After an evidentiary hearing on the matter in which both the Grant and his former attorney testified, I find Grant did not ask nor expect his attorney to appeal. Accordingly, I recommend the district judge deny Grant's § 2255 application.[1]

*A. Facts*

On the evening of January 4, 2001, at a residence in eastern Hillsborough County, Grant, Juel Dunn, and Keith North, together with others, processed powder cocaine into crack cocaine. When a deputy sheriff spotted a procession of three vehicles on a dirt road

---

[1] The district judge referred this matter to me with instructions to appoint counsel, conduct an evidentiary hearing if necessary, and issue a report and recommendation. *See* 28 U.S.C. § 636 and Local Rule 6.01(b).

leaving that residence and one of them, a red truck, driving erratically, the deputy pursued the truck and made a traffic stop. Dunn exited the driver's side. As he approached the deputy, the deputy noted a strong odor of marijuana. Grant then emerged from the passenger's side holding a box. At some point, a struggle ensued between Dunn and the deputy. Grant took off with the box. After securing Dunn, the deputy called for assistance and described Grant. An off-duty deputy saw Grant running from the scene with the box and then discard the box. Eventually, deputies arrested Grant and found the box. Inside deputies discovered more than three kilograms of crack cocaine (doc. 131, pp. 29-30).[2]

A few days later, a federal grand jury indicted Grant, Dunn, North and others with conspiracy to manufacture, distribute, and possess with intent to distribute 50 grams or more of cocaine base (count one), possession with intent to distribute 50 grams or more of cocaine base (count two), and possession with intent to distribute 500 grams or more of cocaine (count three). On September 10, the morning his trial was to begin, the Defendant pleaded guilty to all three counts without the benefit of a plea agreement. He faced minimum-mandatory ten year terms for counts one and two and a five year minimum-mandatory term in count three.

From receipt of the preliminary pre-sentencing report, Grant's counsel, John Kingston, hoped to accomplish three things for Grant: eliminate the firearm enhancement, obtain a minor role adjustment, and convince the judge to give Grant a downward adjustment of three levels for acceptance of responsibility despite Grant's decision to plead

---

[2] The government proffered these facts during Grant's guilty plea. Grant admitted to possessing the box. *Id* at p. 32.

guilty the morning of trial. Kingston successfully achieved all three.

Prior to the sentencing hearing, Kingston managed to convince the probation officer to award Grant a minor role adjustment. Then, at the sentencing hearing, the district judge sustained his objection to the firearm enhancement (despite the government's position). Kingston also persuaded the judge to award Grant all three levels for acceptance of responsibility. Although Grant faced a base offense level of 38 (more than 1.5 kilograms of cocaine base; guideline range 235-293 months) and a minimum-mandatory sentence of ten years, the district judge sentenced Grant to the low end of the applicable guideline range – 108 months (given the applicability of the safety-valve provision).

Grant now says that he instructed Kingston to appeal that sentence. Kingston denies this. Instead, Kingston recalls, and Kingston's notes support this, discussing an appeal with Grant and Grant's deciding against one. *See* doc. 133, ex. A; also G. exhibit #3.

   *B. Discussion*

A defendant claiming constitutionally ineffective assistance of counsel must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) that counsel's deficient performance prejudiced the defendant. *Strickland v. Washington,* 466 U.S. 668, 688, 694 (1984). In *Roe v. Flores-Ortega,* 528 U.S. 470, 477 (2000), the Supreme Court reaffirmed the principle that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. That finding, so the Court reasoned, also implicated "the other end of the spectrum." If a defendant explicitly tells his attorney *not* to file an appeal, that defendant

cannot later complain that, by following his instructions, his counsel performed deficiently. *Id.* Grant, who told his attorney he did not want to appeal, fits this end of the spectrum.

Although Grant says he told his lawyer to file an appeal, I do not find him believable for a number of reasons. First, the grounds he says Kingston and he purportedly discussed as the bases for an appeal make no sense. He contends that Kingston agreed to appeal the drug quantity that supported the base offense level calculation even though Kingston had not objected to the drug amount at sentencing. Recognizing the failure to object to a sentencing issue waives that issue on appeal, Kingston denied ever telling Grant this. Besides, Kingston would not have disputed the drug quantity used to determine the base offense level for other reasons. During the plea colloquy, Grant admitted to possessing the box containing more than three kilos of crack. *See* doc. 131 at p.32. This automatically put Grant at the highest base offense level allowed. *See* USSG § 2D1.1(c)(1). And objecting would have jeopardized Grant's acceptance of responsibility argument. In short, there was no drug amount controversy, and Grant did not ask Kingston to appeal on this issue.

Likewise, Grant's claim that Kingston would seek a minor role adjustment on appeal ignores that Kingston had achieved that goal before sentencing. Why would Kingston discuss appealing a benefit Grant received? Lastly, and as the government pointed out, Grant, who wrote Kingston letters after the sentencing, never asked his lawyer about the appeal. Instead, those letters mainly focused on Grant's claims that he could still

cooperate and thereby hopefully reduce his sentence.[3]

*C. Conclusion*

For the above reasons, I do not find that Grant's counsel rendered constitutionally ineffective assistance of counsel. In sum, his counsel followed his instructions about not appealing the sentence and conviction. Therefore, it is hereby

RECOMMENDED:

1. Grant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody be DENIED.

IT IS SO REPORTED at Tampa, Florida on June 7, 2005.

*/s/ Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

cc: Counsel of Record

---

[3] I also note this is not the first time Grant has complained about his attorney and argued that his version should be believed over that of his counsel. In April 2001, he accused his former court-appointed counsel of lying to him and disagreeing with "the defense argument that the pending charges are false & should be argued in trial." *See* doc. 46. Of course, Grant changed his account there when it benefitted him to do so.